UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
LUIS MALDONADO,                         :
                                        :
                    Petitioner,         :    08 Civ. 7155 (DLC)
                                        :
          -v-                           :    OPINION & ORDER
                                        :
UNITED STATES OF AMERICA,               :
                                        :
                    Respondent.         :
                                        :
----------------------------------------X

Appearances:

Pro se Petitioner:
Luis Maldonado
Reg. No. 50687-054
FCI Schuylkill
P.O. Box 759
Minersville, PA 17954

For Respondent:
Lev L. Dassin
Acting United States Attorney
Anna E. Arreola
Assistant United States Attorney
Southern District of New York
1 Saint Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

     Luis Maldonado has moved pursuant to 28 U.S.C. § 2255 to

vacate his conviction on the ground that his counsel, who

represented him at his plea of guilty and on appeal, was

ineffective.  For the following reasons, the petition is denied.

BACKGROUND

Maldonado was charged on June 12, 2001, in a single count indictment with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin from 1995 through August 1996, in violation of 21 U.S.C. § 846.  The Government's evidence, which included conversations recorded pursuant to court-authorized wiretaps, showed that Maldonado was the principal supplier of heroin to a heroin distribution organization led by Jose Antonio Garcia ("Garcia").

Maldonado was arrested on July 2, 2001.  In the Pimentel letter that the Government provided to his counsel, the Government estimated that his offense level was 43.[1]  This estimate was based on a base offense level of 38 for the distribution of more than 30 kilograms of herion; a 2 level enhancement for possession of a firarm in connection with the drug-distribution activities; and a 4 level enhancement for Maldonado's role in the offense.  The letter opposed any adjustment for acceptance of responsibility.  Based on a Criminal History Category II, the letter projected a guidelines sentence of life imprisonment.

Maldonado pleaded guilty on May 1, 2003, before the Honorable Andrew Peck.  Maldonado admitted to distributing more

---

[1] See United States v. Pimentel, 932 F.2d 1029, 1034 (2d Cir. 1991).

than one kilogram of heroin through his arrangements with others.  On May 16, the Honorable John Martin accepted the plea.

The presentence report ("PSR") found that the guidelines range was 292 to 365 months' imprisonment based on an offense level of 38 and a Criminal History Category of III.  It awarded a 2 level adjustment for acceptance of responsibility; and it rejected any role enhancement.

Judge Martin held a <u>Fatico</u> hearing on September 24, 2003.  Based on the hearing evidence, Judge Martin found that Maldonado was responsible for the distribution of 10 to 30 kilograms rather than 30 kilograms or more.  This finding resulted in a base offense level of 36.  Judge Martin also found that Maldonado did possess a firearm in relation to drug trafficking and did lead and organize five or more participants in the criminal activity.  He awarded a 2 level adjustment for acceptance of responsibility.  As a result, the total offense level was 40, with a guidelines range of 360 months' to life imprisonment.

Judge Martin then departed from the guidelines range, both horizontally and vertically.  Finding that Maldonado was a substantial, but medium-level drug dealer who customarily dealt in half-kilo lots, the court concluded that the conduct was outside the heartland of dealers who distribute 10 to 30 kilograms of heroin, and departed 2 levels.  Referring to the

timing of a state case, whose resolution had increased Maldonado's criminal history category, the judge departed horizontally from Criminal History Category III to II.  With an offense level of 38 and in Criminal History Category II, the guidelines range became 262 to 327 months' imprisonment.  Judge Martin sentenced Maldonado principally to 262 months' imprisonment after the conclusion of the Fatico hearing, and requested that the sentence run concurrently with Maldonado's nine-year state sentence for kidnapping.

On appeal, Maldonado challenged the drug quantity determination.  The Court of Appeals affirmed the sentence, but stayed its mandate pending the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).  Following the Booker decision, the Second Circuit remanded the case for further proceedings in conformity with United States v. Crosby, 397 F.3d 103 (2d Cir. 2005).

On remand, the case was reassigned to this Court.  At a Crosby remand proceeding on May 24, 2006, the Court declined to resentence Maldonado.  On November 8, 2007, the Court of Appeals rejected Maldonado's appeal and affirmed his sentence. Maldonado's petition for certiorari was denied on March 3, 2008.

DISCUSSION

On July 28, 2008, Maldonado filed this habeas petition, raising three ineffective assistance of counsel claims.[2]  The claims concern Maldonado's representation in connection with his plea of guilty, at the <u>Fatico</u> hearing and sentence, and on direct appeal.  He asks for a hearing to resolve these claims. Assigned CJA counsel Stephanie Carvlin represented Maldonado at each of the challenged proceedings, and has submitted an affidavit of February 5, 2009, pursuant to the Court's Order of December 29, 2008, to address Maldonado's claims about the adequacy of her representation.  The Government opposed Maldonado's petition on February 13, and Maldonado filed a reply on March 16.

To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) that, as a result, he suffered prejudice.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 693-94 (1984); <u>accord</u> <u>Hernandez v. United States</u>, 202 F.3d 486, 488 (2d Cir. 2000).  The performance inquiry examines the reasonableness of counsel's actions under "all the circumstances," <u>Strickland</u> at 688, and from the perspective of counsel at the time.  <u>Id.</u> at 689; <u>Rompilla v.</u>

---

[2] Maldonado's petition, which is dated July 24, 2008, was received by the Pro Se Office on July 28, and filed with the Clerk of Court on August 11.

Beard, 545 U.S. 374, 381 (2005); accord Mayo v. Henderson, 13
F.3d 528, 533 (2d Cir. 1994).  A court "must indulge a strong
presumption that counsel's conduct falls within the wide range
of reasonable professional assistance."  Strickland, 466 U.S. at
689.  To show prejudice, the defendant must demonstrate that
"there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  Id. at 694; accord Mayo, 13 F.3d at 534.

     Strickland also governs ineffective assistance of appellate
counsel claims.  Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir.
2006).  Under this standard, appellate counsel have no duty to
raise every possible argument on appeal.  Jones v. Barnes, 463
U.S. 745, 751 (1983); accord Sellan v. Kuhlman, 261 F.3d 303,
317 (2d Cir. 2001).  To prevail on a claim of ineffective
assistance of appellate counsel, a petitioner must show that
"counsel omitted significant and obvious issues while pursuing
issues that were clearly and significantly weaker."  Clark v.
Stinson, 214 F.3d 315, 322 (2d Cir. 2000).

     The Strickland test also applies to claims of ineffective
assistance of counsel regarding the plea process.  Hill v.
Lockhart, 474 U.S. 52, 57 (1985); Boria v. Keane, 99 F.3d 492,
496 (2d Cir. 1996).  To render objectively reasonable assistance
under the first prong of Strickland in the plea process, defense
counsel "must give the client the benefit of counsel's

6

professional advice on th[e] crucial decision of whether to
plead guilty." Purdy v. United States, 208 F.3d 41, 44 (2d Cir.
2000) (citation omitted).  This advice must include the "terms
of the plea offer," and "should usually inform the defendant of
the strengths and weaknesses of the case against him, as well as
the alternative sentences to which he will most likely be
exposed." Id. at 45.  Defense counsel must take care, however,
not to "arm-twist a client who maintains his innocence into
pleading guilty." United States v. Pitcher, 559 F.3d 120, 125
(2d Cir. 2009).  To establish prejudice, "the defendant must
show that there is a reasonable probability that were it not for
counsel's errors, he would not have pled guilty and would have
proceeded to trial." United States v. Arteca, 411 F.3d 315, 320
(2d Cir. 2005) (citation omitted).

     Courts may attribute a strong presumption of truthfulness
to the defendant's statements during the plea hearing.  In the
context of a plea of guilty, the Supreme Court has held that
statements at a plea hearing "carry a strong presumption of
verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); accord
United States v. Doe, 537 F.3d 204, 213 (2d Cir. 2008); United
States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001); Adames v.
United States, 171 F.3d 728, 732 (2d Cir. 1999).

     Although a court must grant a prompt hearing on a § 2255
petition "[u]nless the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255, a § 2255 petitioner is not automatically entitled to an evidentiary hearing in the district court. Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977); see also United States v. Stantini, 85 F.3d 9, 17 (2d Cir. 1996). In order to obtain a hearing, a § 2255 petitioner must raise "detailed and controverted issues of fact" in an affidavit. Newfield, 565 F.2d at 207 (citation omitted).

1. Coerced Guilty Plea

Maldonado asserts that he was coerced into pleading guilty by his attorney, who threatened him with a life sentence. According to Maldonado,

> Petitioner went through 4 attorneys in this case, the last of which was retained, in an effort to exercise his right to jury trial. However, he was continually threatened with a life sentence, until he finally conceded to enter the guilty plea.

In his brief in support of his petition, Maldonado notes that he "admitted participation in the [drug] conspiracy, but denied many of the specifics alleged by the government." Later in the brief, he asserts that he was not guilty, was "actually innocent," and never admitted in open court any of the accusations against him. He claims that he "wanted to profess his innocense [sic] in court by jury trial, but was coerced by his attorney to accept a guilty plea." The brief explains that

8

his attorney told him that the judge was "'fed-up'" with him
because he had gone through so many different lawyers.  The
attorney added that he "would surely lose at trial and
consequently be sentenced to life in prison."  He notes that at
the sentencing hearing the judge told him that "if he proceeded
with the hearing he would be in fact facing a life term in
prison."

In her affidavit, Carvlin explains that she was assigned to
represent Maldonado on about January 30, 2003, and met with him
while accompanied by an interpreter about eight times in the
Metropolitan Correctional Center before he pleaded guilty on May
1, 2003.  Carvlin made notes of her meetings near the time they
occurred, and sent several letters to Maldonado, all of which
she reviewed in preparing her affidavit.

From her first meeting with Maldonado, he admitted
distributing heroin.  Based on her review of the discovery
material, including the wiretapped conversations, Carvlin
advised Maldonado that she believed the Government could prove
him guilty of conspiring to distribute one kilogram or more of
heroin, as charged in the indictment.  They discussed the
evidence against him, including statements that Maldonado had
already made to the Government during proffer sessions when he
was represented by prior counsel.  Maldonado never professed his
innocence, and told Carvlin that he wished to plead guilty.  He

denied, however, that he had possessed a weapon in relation to
the narcotics offense or played a supervisory role.

As Carvlin advised Maldonado, the Government was willing to
enter into a plea agreement with a total offense level of 37 and
Criminal History Category of II, but if Maldonado chose to
contest these calculations and plead guilty without an agreement
with the Government on a sentencing guidelines range, it was
prepared to prove a higher guidelines range.  Specifically, it
was prepared to prove that Maldonado was responsible for
conspiring to distribute more than 30 kilograms of heroin (as
opposed to the 10 to 30 kilograms in the proffered agreement),
that a four level role enhancement applied (as opposed to a two-
level enhancement in the proffered agreement[3]), that there should
be a two level enhancement for possession of a weapon in
relation to the offense (which was also included in the
proffered agreement), and that only a two-level reduction for
acceptance of responsibility was warranted (as opposed to the
three levels in the proffered agreement).  Carvlin advised
Maldonado that he would be exposed to a longer sentence with no
plea agreement.  The Government later informed Carvlin that if
there were a <u>Fatico</u> hearing, the Government would oppose any

---

[3] The agreement had a three-level adjustment, but the Assistant
United States Attorney represented that he would seek permission
to reduce that to a two-level adjustment.

acceptance of responsibility adjustment.  Carvlin advised
Maldonado of this in writing and orally.

 Carvlin reports that she never told Maldonado that he would
receive a life sentence if he didn't plead guilty.  She
describes the many possible sentencing scenarios she discussed
with Maldonado, each of which yielded a different guidelines
range.  They ranged from a low of 235 to 293 months to a
guidelines range of life.  Maldonado chose to plead guilty
without a plea agreement and to contest the sentencing
enhancements for possession of a weapon, role in the offense,
and the quantity of drugs distributed, in addition to his
criminal history classification.

 Maldonado's reply does not take issue with any of Carvlin's
factual representations or add other facts to be considered in
connection with his claim concerning his plea.  Instead, he
reiterates his desire for a hearing, and emphasizes his
arguments regarding his sentence.

 At his plea of guilty, Maldonado testified under oath with
the assistance of an interpreter.  He promised that he would ask
the judge to explain anything he didn't understand.  He said
that he had talked with Carvlin about the charges he was facing
and how he wished to proceed and was satisfied with the
representation he was receiving from her.  He added that he was
ready to enter a plea and wished to plead guilty to the

conspiracy charge.  He admitted understanding that the charge
carried a maximum sentence of life imprisonment and a mandatory
minimum sentence of 10 years' imprisonment, among other
sentencing provisions, and that he had a right to go to trial.

When advised about his right to be represented by counsel,
he offered that he would continue with his present attorney.
The judge responded, "All right, and by that do you mean you
will continue with Miss Carvlin for your plea or that you want
to go to trial?"  Maddonado answered, "No, I do not want to go
to trial."  In response to being informed about his right to
call witnesses to testify at trial, Maldonado said, "No, no, I
don't want to go to trial, I want to plead guilty."  When
advised about his right to cross-examine witnesses at trial,
Maldonado said, "Yes, I understand that, but I did not make a
decision to go to trial."  He admitted understanding that if he
pleaded guilty, that there would be no trial.  He acknowledged
that he had discussed the sentencing guidelines with Carvlin.
Maldonado denied that any threats had been made to him by anyone
to influence or convince him to plead guilty or that he had been
promised any particular sentence.

Following advice on these and other rights, Maldonado
reiterated that "I want to plead guilty."  When asked if he was
doing so "freely and voluntarily, because you are in fact guilty
of the crime charged?" Maldonado answered "Yes."  Carvlin

responded in the affirmative to a question as to whether, in her
view, Maldonado was pleading guilty "freely and voluntarily,
based on the fact that he is guilty."

Maldonado then explained that he had agreed with other
people to distribute one kilogram and more of heroin in the
borough of Manhattan in 1995 or 1996.  When the Government
described the intercepted telephone calls between Maldonado and
other members of the conspiracy, Carvlin added that she had
reviewed the line sheets of the calls with Maldonado.

Maldonado has not shown that Carvlin provided ineffective
assistance of counsel to him in connection with his plea, or
that a hearing is necessary to resolve this issue.  The Court is
entitled to rely on Maldonado's repeated statements during his
plea allocution, given under oath, that he wished to plead
guilty.  He was correctly advised of the sentencing parameters
for the crime to which he pleaded guilty, and expressed his
satisfaction with Carvlin's representation of him and his desire
to keep her as his attorney.  He provided a sufficient narrative
of his criminal conduct to support the plea of guilty, and was
fully advised of his right to proceed to trial.  The Government
has shown, and Maldonado does not dispute, that the Government
had sufficient evidence to convict him at trial of the crime
with which he was charged, including tape recordings of his
discussions of his drug dealings.  In these circumstances,

13

Maldonado's conclusory assertions of innocence and a desire to go to trial are unavailing.  (Indeed, his petition papers also concede that he was guilty of participating in a narcotics conspiracy.)

As for Carvlin's alleged "threat" that Maldonado would be convicted and would receive a life sentence if he went to trial, Maldonado has not shown that this "threat" should be understood as anything more than Carvlin's entirely appropriate description of the risk that Maldonado took if he proceeded to trial. Carvlin acted properly in discussing the strength of the Government's evidence with her client and conveying her analysis of the likely verdict at trial and the range of sentences, including the upper limit of the sentence, that could be imposed following trial.  Maldonado's plea allocution confirms that this is the correct understanding of their conversations; at his plea allocution, Maldonado denied that any threats had been made against him to cause him to plead guilty.

Moreover, there is also no need for a hearing on this issue.  Maldonado's petition contained only a conclusory description of the supposed threats.  Carvlin has responded with a detailed description of her conversations with her client,

which he has not disputed.  Maldonado's first claim of
ineffective assistance of counsel is rejected.[4]

    2. <u>Fatico</u> Hearing:  Advocacy Regarding Firearm

    Maldonado contends that his attorney failed to argue at the
<u>Fatico</u> hearing that the Government had not shown by a
preponderance of the evidence that Maldonado possessed a firearm
in connection with the drug activity.  Maldonado points to
inconsistent testimony about the firearm underlying the weapon
enhancement by the sole witness at the <u>Fatico</u> hearing.  He
asserts that the witness Edelio Moya ("Moya") testified that
Maldonado had brought a gun to a meeting and had a weapon in his
apartment, but then admitted on cross examination that he had
initially told the federal agents who had interviewed him that
he, Moya, possessed a firearm, which he then gave to the agents.
Moya also admitted that he never mentioned that Maldonado had a
weapon until later interview sessions with the agents.  Finally,
Maldonado represents that Moya repeated Maldonado's statement,
given when the two met briefly while in custody, that he was not
going to accept responsibility "for guns in the case" because he
was not responsible for any firearms.  Maldonado argues that,
given this testimony, there was insufficient evidence to find in

---

[4] It is not clear from Maldonado's petition that he seeks to
withdraw his plea of guilty.  It appears that what he wants is
to be re-sentenced.

the Government's favor by a preponderance of the evidence and his attorney failed to make this argument to Judge Martin.

The PSR had added a two level enhancement for possession of a gun in relation to the offense.  Carvlin contested the weapon enhancement, among other things, in her sentencing submission and asked for a <u>Fatico</u> hearing.

At the hearing, Moya[5] testified that while working in Maldonado's apartment he saw two guns in a closet and that he remembered Maldonado taking a gun out of the apartment and putting it in a trap in a van used to deliver drugs to one of Maldonado's clients.  Moya added that, while waiting for a court appearance, he saw Maldonado, who said, "they were giving him too long here, that they were charging him for possession of two firearms, and they were saying that [Moya] was his worker.  And then towards the end he told me, 'I can make myself responsible for the forty kilos that they are charging me with but not for all the other things.'"  Judge Martin found Moya credible on the firearms issue.

Maldonado's claim of ineffective assistance during the <u>Fatico</u> hearing must be denied without a hearing.  A review of

---

[5] Moya had worked for Garcia's drug organization, but also worked directly for Maldonado's heroin organization for a month and a half in 2006.  Moya cut heroin in Maldonado's apartment and used a press to make the cut heroin look as if it had come directly from Colombia.  He also delivered Maldonado's heroin to three individuals who worked for Maldonado selling heroin on a street corner.

the hearing transcript shows that Carvlin ably explored in her
cross-examination of Moya the reasons why his testimony about
the firearms should be rejected.  Judge Martin had more than
sufficient evidence, having found Moya to be credible, from
which to find that Maldonado possessed a firearm in connection
with his drug offense.  Maldonado has not identified any issue
of fact that requires exploration at a hearing.

   3. Omitted Issues on Appeal:  Firearm Enhancement and Role
      Adjustment

     Maldonado's last claim is that his attorney failed to
challenge on his direct appeal the four-level role enhancement
or the two-level enhancement for the use of a weapon.  As for
the former, Maldonado asserts that Judge Martin failed to make
specific fact findings to support the role enhancement.

     In her affidavit, Carvlin explains that she did not raise
the issues of the role adjustment or the weapon enhancement on
appeal because she believed that "they lacked merit."  She
believed that Judge Martin's conclusions were supported by both
testimony and documentary evidence.  Instead, she raised the
issue of the drug quantity on appeal.

     Maldonado's final claim of ineffective assistance must also
be denied.  He has not shown that Carvlin selected grounds for
appeal unreasonably, and he has not shown that a hearing is
necessary to resolve this question.

As already described, during the <u>Fatico</u> hearing the
Government presented sufficient evidence to support the gun
enhancement, and Judge Martin made explicit findings to support
the enhancement.  Similarly, through Moya's testimony and other
evidence, the Government showed that Maldonado was a leader of a
heroin distribution organization that involved five or more
others.  While Maldonado complains that Judge Martin did not
make specific fact findings to support the role adjustment, and
as a result, the application of the enhancement was vulnerable
to attack on appeal, Maldonado is in error.  Judge Martin
engaged in active dialogue with counsel on the issue of how many
persons were involved with Maldonado in his work, and concluded
with the observation: "It does seem to me that the government
has established that the defendant was an organizer or leader of
a criminal activity that involved five or more participants, and
that that four-level increase is appropriate."  Maldonado's
assertion that Judge Martin made no finding of facts to support
the role adjustment is therefore belied by the record.

CONCLUSION

Luis Maldonado's July 28, 2008 petition for a writ of
habeas corpus is denied.  In addition, the Court declines to
issue a certificate of appealability.  Maldonado has not made a
substantial showing of a denial of a federal right, and

appellate review is therefore not warranted.  Love v. McCray,

413 F.3d 192, 195 (2d Cir. 2005).  The Court also finds pursuant

to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would

not be taken in good faith.  Coppedge v. United States, 369 U.S.

438, 445 (1962).  The Clerk of Court shall dismiss this petition

and close the case.

SO ORDERED:

Dated:    New York, New York
          May 18, 2009

                                    DENISE COTE
                            United States District Judge